UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

ALFRED WILLIAMS,
    Plaintiff,

    v.                                          No. 3:15-cv-627 (VAB)

STATE OF CONNECTICUT
DEPARTMENT OF CORRECTIONS,
CAPTAIN JAMES SHABENAS,
LIEUTENANT HERMAN CORVIN,
LIEUTENANT BRIAN PALMER,
and WARDEN SCOTT EFIE,
    Defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS

Alfred Williams brought this action against the Connecticut Department of Corrections ("DOC") and four of the DOC's employees. Compl., ECF No. 1; Am. Compl., ECF No. 7. Mr. Williams alleges that he is a male, African-American DOC employee who has experienced harassment, discriminatory treatment, and retaliation by the Defendants because of his race and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 *et seq*. Am. Compl. ¶¶ 4-7, Counts One and Two, ECF No. 7.[1] He also claims that the Defendants violated his constitutional rights in violation of 42 U.S.C. §§ 1981, 1983, and 1985, and that Defendant Palmer defamed him. Am. Compl. at Counts Three and Four, ECF No. 7. Mr. Williams seeks front pay and benefits, injunctive and declaratory relief, compensatory, "expectancy," and punitive damages, and costs and attorney's fees. *Id.* at Requests for Relief.

---

[1] At oral argument on the Motion to Dismiss, Mr. Williams's counsel agreed to withdraw his CFEPA claim. Because he has not filed a stipulation of voluntary dismissal, the claim remains pending.

1

Defendants have moved to dismiss the Complaint in its entirety for various reasons under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).  Mot. to Dismiss, ECF No. 26.  Because Mr. Williams failed to properly serve the Defendants, the Motion to Dismiss, ECF No. 26, is **GRANTED** in its entirety under Rule 12(b)(2).  However, this dismissal is without prejudice to Mr. Williams serving the Defendants with process properly within thirty (30) days of this Order.

## I.     FACTUAL ALLEGATIONS

Mr. Williams is an African-American male who serves in the Navy reserves.  Am. Compl. ¶¶ 4, 6, ECF No. 7.  He alleges that the DOC hired him as a corrections officer in 1999.  *Id.* ¶ 36.  He claims that he was subject to specific incidents of discrimination during his employment as follows.

On one occasion, Mr. Williams claims that he was transferred to work at a particular correctional institution, Corrigan, because a set of keys went missing, but that the Defendants took no such action against the white officers "involved in the situation." *Id.* ¶¶ 9-10.  Defendant Palmer allegedly accused Mr. Williams of losing the keys and asked him to account for the keys and write a report about them.  *Id.* ¶¶ 28-29.  Defendant Palmer also allegedly knew, at the time, that another white officer had taken the keys home.  *Id.* ¶ 29.

In another instance, Mr. Williams claims that he was questioned about why he had not changed some surveillance tapes, but that he was on light duty and was physically unable to change the tapes.  *Id.* ¶ 11.  He claims that one of the Defendants was responsible for changing the tapes and that no white officers were questioned or treated the way he was.  *Id.* ¶¶ 12-13.

Mr. Williams also alleges that Defendant Corvin required him to sign the DOC log book when he was on duty, while other officers were not required to do so. *Id.* ¶ 14. He claims that this selective enforcement of the rules was discriminatory. *See e.g.*, *id.* ¶59a.

Mr. Williams also alleges that the Defendants gave him unfavorable work assignments on a discriminatory basis. He claims that, in 2008, a merger occurred between the Corrigan and Radgowski facilities. *Id.* ¶ 37. In the context of this merger, he alleges that white officers were assigned to work at the facility with which they were more familiar, but he was not. *Id.* ¶¶ 37-38. He claims that Defendant Corvin was responsible for this decision. *Id.* ¶ 24. He also alleges that white officers generally have the freedom to choose their posts, but he does not. *Id.* ¶ 47.

Mr. Williams claims that he passed the Lieutenant examination around 2012 but, despite his "excellent" scores on the examination and lack of a disciplinary record, he was allegedly denied a series of promotions beginning on or about November 29, 2013. *Id.* ¶¶ 41, 48. By comparison, he alleges that the DOC has promoted several white officers, including a female, white officer to the rank of Lieutenant after it knew or should have known that she had engaged in "unlawful sexual relations" with an inmate in his cell. *Id.* ¶¶ 42-43, 49. Since November 2013, DOC has allegedly promoted three officers to the rank of Lieutenant, all of whom were white. *Id.* ¶ 50.

Mr. Williams alleges that Defendant Efie told him that he was not given promotions because he worked on the third shift and served in the Navy Reserves. *Id.* ¶51. But one of the white officers who was promoted allegedly worked the third shift, and another allegedly served in the Navy Reserves. *Id.* ¶ 52.

Mr. Williams also claims that the DOC engages in a "policy" of scoring a "large number" exam takers as "superior" without a sufficiently objective standard. *Id.* ¶ 44. In his view, this scoring system has allowed the DOC to promote individuals on an arbitrary basis and allegedly has had a disparate impact on African-American officers. *Id.* ¶¶ 44-45.

Finally, Mr. Williams alleges that the Defendants filed "retaliatory job evaluations and reviews," "selectively" enforced requirements for advancement, and failed to train and discipline employees regarding discrimination. *Id.* ¶¶ 59a-b, 59e, 59h-j, 59o. He also claims that the Defendants failed to provide adequate mechanisms for employees to complain about discrimination. *Id.* ¶¶ 59k, 59n.

## II. THIS COURT LACKS PERSONAL JURISDICTION OVER THE DEFENDANTS

For this Court to exercise personal jurisdiction over the Defendants, Mr. Williams must show that he served them with process properly. *See Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). Where the Court does not conduct an evidentiary hearing, a plaintiff need only make a "prima facie showing" that the Court has personal jurisdiction over the defendants. *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). He may do so by relying solely on "good faith" allegations in his complaint, which the Court must accept as true and construe in the light most favorable to him at this stage. *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013) (citation and internal quotation marks omitted). He may also submit affidavits and evidence supporting the existence of personal jurisdiction. *See id.* at 84; *Carney v. Horion Invs. Ltd.*, 107 F. Supp. 3d 216, 222 (D. Conn. 2015).

The Defendants have moved to dismiss this case under Federal Rule of Civil Procedure 12(b)(2), because they believe that the Court lacks personal jurisdiction over them. They argue that Mr. Williams failed to properly serve them. To effect service for all of the Defendants named in this case, Mr. Williams's affidavits of service indicate that Jacinta Williams served the summons and complaint on Associate Attorney General Kimberly Massicotte, based in Hartford, Connecticut, who is "designated by law to accept service of process" on DOC's behalf. Proofs of Service, ECF Nos. 13-17. Ms. Williams is not a party to this lawsuit, nor is she a state marshal.

For the reasons that follow, the Court finds this procedure failed to comply with Connecticut law, but it will exercise its discretion to grant Mr. Williams an extension of time in which to properly serve the Defendants with process.

**A.  Mr. Williams's Failure to Properly Serve Process**

Federal Rule of Civil Procedure 4(j)(2)(B) requires that a "state… or any other state-created governmental organization" being sued in federal court be served "in the matter prescribed by that state's law." Connecticut General Statutes section 52-64 provides, in the relevant portion, that service of civil process on a department of the state or employee of the same "may be made by a proper officer (1) leaving a true and attested copy of the process, including the declaration or complaint, with the Attorney General at the office of the Attorney General in Hartford . . . ." Employees of the State of Connecticut, who are sued in their official capacities, must also be served consistent with this same statute. *See Banerjee v. Roberts*, 641 F. Supp. 1093, 1099 (D. Conn. 1986); *see also Bogle-Assegal v. Connecticut*, 470 F.3d 498, 507-08 (2d Cir. 2006).

Section 52-64 does not define "proper officer."  Conn. Gen. Stat. § 52-64.  The Defendants contend that Connecticut General Statutes section 52-50(a) defines "a proper officer" to include "a state marshal, a constable or other proper officer authorized by statute."  Defs.' Br. 8, ECF No. 26-1.  They argue that because Jacinta Williams is not listed on the state marshal list, she is not a "proper officer" and that, as a result, service failed to comply with Connecticut law.  *Id.* at 8-9.

Mr. Williams argues that Jacinta Williams is an "indifferent person" and, therefore, satisfies the definition of "proper officer" under section 52-50(a), the same section cited by the Defendants.  Pl.'s Opp. Br. 8, ECF No. 28.  Section 52-50(a) provides in its entirety that

> [a]ll process shall be directed to a state marshal, a constable or other proper officer authorized by statute, or, subject to the provisions of subsection (b) of this section, to an indifferent person.  A direction on the process "to any proper officer" shall be sufficient to direct the process to a state marshal, constable or other proper officer.

Conn. Gen. Stat. § 52-50(a).

The Defendants urge the Court to find that an "indifferent person" cannot serve employees of the state under section 52-64, because section 52-50(a) defines only who may accept service.  Defs.' Reply Br. 5, ECF No. 30.  While section 52-50 does appear to describe those who may accept service, in their own brief, the Defendants urge the Court to look at section 52-50(a)—the very same section—for the definition of a proper officer who may serve process.  Moreover, the Connecticut Supreme Court has noted that section 52-50 defines the term "proper officer" in the context of determining who may serve defendants with process under Connecticut law.  *See Francis v. Francis*, 303 Conn. 292, 299 & n.11 (2012) (looking to section 52-50 to define a "proper officer" in the

6

context of determining who may effect service under various provisions of the Connecticut General Statutes, including section 52-64).  The Defendants have not provided any cases or other support for the notion that, in determining the definition of proper officer, the Court should only consider part of section 52-50.  Thus, the Court will apply section 52-50 in its entirety to determine whether Jacinta Williams constituted a "proper officer" able to serve the Defendants with process.

Under section 52-50(a), an "indifferent person" is a "proper officer" if the conditions in subsection (b) are met.  Conn. Gen. Stat. § 52-50(a); *Francis*, 303 Conn. at 299 n.11 (considering an "indifferent person" as part of the definition of a "proper officer" in the context of evaluating who may effect service of process under Connecticut law); *cf. Wise Invs. v. Donadio*, No. CV91 28 93 53, 1993 WL 119713, at *1-2 (Conn. Super. Ct. Apr. 6, 1993) (same).  Section 52-50(b) provides that "[p]rocess shall not be directed to an indifferent person unless more defendants than one are named in the process and are described to reside in different counties in the state . . . ."  Conn. Gen. Stat. § 52-50(b); *see also Howard v. Albertus Magnus Coll.*, CV030472650, 2003 Conn. Super. LEXIS 1869, at 9 (Conn. Super. Ct. July 2, 2003) ("Service of process by an indifferent person… would not be proper [if] none of the defendants named in the process reside in different counties . . . .").

In his memorandum opposing the Motion to Dismiss, Mr. Williams avers that the Defendants in this case reside in different counties and, thus, that service by an "indifferent person" was appropriate.  Pl.'s Opp. Br. 8, ECF No. 27.  He provides no affidavit or other evidence attesting to where the Defendants reside.  Nor does he include allegations in the Complaint indicating the Defendants' residency.

7

As noted above, in determining whether personal jurisdiction exists at this stage, the Court may consider the allegations in a complaint and any evidence or affidavits submitted by the plaintiff.  *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)("If the court chooses not to conduct a full-blown evidentiary hearing on the motion [to dismiss for lack of personal jurisdiction], the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials."); *McFarlane v. Brock*, No. 3:00CV1097SRU, 2000 WL 1827353, at *2 (D. Conn. Nov. 30, 2000) ("When there has been no evidentiary hearing, the plaintiff must make a prima facie showing of personal jurisdiction by legally sufficient allegations of jurisdiction in his complaint, or by affidavit and other supporting materials.") (citations omitted).

The Court, however, cannot rely on a party's unsworn statements in his memorandum to defeat a motion to dismiss for lack of personal jurisdiction.  *See Guo Jin v. EBI, Inc.*, No. 05-CV-4201 (NGG)(SMG), 2008 WL 896192, at *2 n.3 (E.D.N.Y. Mar. 31, 2008) (noting that "[a plaintiff] may not [ ] rely on the unsworn statements in his memorandum of law in order to make a *prima facie* showing of personal jurisdiction" and that instead, he must rely on allegations in his Complaint or affidavits); *Lafayette SC, LLC v. Crystal Coast Invs., Inc.*, Case # 14-CV-6284-FPG, 2016 WL 1271077, at *1 n.1 (W.D.N.Y. Mar. 28, 2016) ("This means the Court is left with only the unsworn statements in [plaintiff's] memorandum of law, which cannot be relied upon to make a *prima facie* case of personal jurisdiction."); *see also MacFarlane*, 2000 WL 1827353, at *2 (because plaintiff's opposition to the motion to dismiss "did not include an affidavit or other evidence on which the court could rely… the court must rely on the allegations in the complaint to determine if personal jurisdiction exists."); *cf. Craig v. First Web Bill,*

8

*Inc.*, No. Civ.A.04-CV-1012 DGT, 2004 WL 2700128, at *1 n.3 (E.D.N.Y. Nov. 29, 2004) ("[F]actual allegations proffered in a brief or memorandum do not constitute facts which may considered on this motion [to dismiss under Rule 12(b)(2)], unless they are supported by affidavits or other evidence.") (collecting cases).  By only providing unsworn statements in his memorandum about where the Defendants reside, Mr. Williams has failed to make a prima facie showing that the Defendants reside in different counties and that, therefore, service by Jacinta Williams was proper.  Thus, the Court cannot find that it has personal jurisdiction over the Defendants in their official capacities.[2]

In addition, Mr. Williams admits that he failed to serve the individually named Defendants in their personal capacities, which cannot be accomplished by complying with Connecticut General Statutes section 52-64.  *See Bogle-Assegal*, 470 F.3d at 507 (section 52-64 "does not authorize service through the Attorney General's office on an individual State employee in his or her individual capacity."); *Davis v. Mara*, 587 F. Supp. 2d 422, 425-26 (D. Conn. 2008) (holding that Connecticut General Statutes section 52-57(a) provides the requirements for service of process on state employees sued in their individual capacities); *see also* Fed. R. Civ. P. 4(e) (prescribing methods for serving an individual with process in his personal capacity); *Edelman v. Page*, 123 Conn. App. 233, 243 (2010) (State employees being sued in their individual capacities must be "served at their usual places of abode.").  Thus, to the extent the Amended Complaint seeks to assert any claims against the individually named Defendants in their personal capacities, those claims are dismissed for lack of personal jurisdiction.  *See e.g.*, *Traylor v. Awwa*, Civil

---

[2] Moreover, given that the Connecticut statute requires that Defendants served by an indifferent person must be "described" to reside in different counties, Mr. Williams likely needed to include allegations about the Defendants' residency in his Complaint.  Conn. Gen. Stat. § 52-50(b).

9

No. 3:11cv00132(AWT), 2014 WL 555358, at *3-4 (D. Conn. Feb. 10, 2014) (dismissing claims against Connecticut employees in their personal capacities, because those individuals had not been served in their personal capacity consistent with the requirements of Federal Rule of Civil Procedure 4(e)).

### B. Granting an Extension of Time for Mr. Williams to Properly Serve the Defendants under Rule 4(m)

Having established that Mr. Williams failed to properly serve the Defendants with initial process, the Court must examine whether it can grant Mr. Williams an extension of time so that he may correct the error. Under Federal Rule of Civil Procedure 4(m), a district court may extend the time for service "for an appropriate period." Fed. R. Civ. P. 4(m). A court must do so where "good cause" for the failure to serve is shown; it may do so, at its discretion, where good cause for the failure to serve is not shown. *Henderson v. United States*, 517 U.S. 654, 662-63 (1996) (citing Fed. R. Civ. P. 4(m) advisory committee's note to the 1993 Amendments); *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 66-67 (S.D.N.Y. 2010). Because good cause is absent here, the Court may only consider whether it should exercise its discretion to grant an extension. *See e.g.*, *DeLuca*, 695 F. Supp. 2d at 67 n.2 (finding no good cause where no reasonable effort was made to correct deficient service); *Osrecovery, Inc. v. One Grp. Int'l, Inc.*, 234 F.R.D. 59, 61 (S.D.N.Y. 2005) (no good cause existed where deficient service was caused by attorney error).

In evaluating whether to grant a discretionary extension on serving the complaint under Rule 4(m), the Court considers the following factors: "(1) whether the applicable statute of limitations would bar the re-filed action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to

conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *Britton v. Connecticut*, No. 3:14-cv-00133, 2016 WL 308774, at *5 (D. Conn. Jan. 25, 2016) (internal quotation marks and citation omitted); *DeLuca*, 695 F. Supp. 2d at 66 (listing the same factors).[3]  In addition, where good cause for a failure to effect timely service of process is lacking, the Court must "weigh[ ] the impact that a dismissal or extension would have on the parties," bearing in mind that "no weighing of the prejudices between the two parties can ignore that the situation is the result of the plaintiff's neglect." *Zapata v. City of New York*, 502 F.3d 192, 197-98 (2d Cir. 2007).

Here, dismissing the case at this stage would yield a harsh result for Mr. Williams, because the applicable statute of limitations would likely bar or greatly limit the scope of some of his claims.[4]  The Defendants also do not contest that they received actual notice of his claims; thus, any prejudice they suffer will be relatively minimal. Allowing Mr. Williams additional time to fix this service error also comports with the notion that litigation should be resolved on the merits, if possible. *See Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995).  It also promotes judicial efficiency. *See e.g.*, *Craig v. Univ. of Conn. Health Ctr.*, No. 3:13-cv-00281-WWE, 2014 WL 4364530, at *2 (D. Conn.

---

[3] Courts may grant extensions under Rule 4(m) where service occurred but was deficient or failed to comply with relevant requirements. *See e.g.*, *Deluca*, 695 F. Supp. 2d at 66-67 (granting an extension of time in which service must be completed where plaintiff failed to include a copy of the summons when he served the defendant, as required by Rule 4(c)).

[4] Allowing Mr. Williams to re-serve this action will not create the same problems, because a case asserting federal claims is commenced, for statute of limitations purposes, when it is filed, not when it is served. *See* Fed. R. Civ. P. 3; *Slocum v. U.S. Dep't of Veterans Affairs*, No. 3:13-cv-501 (SRU), 2014 WL 4161985, at *3 (D. Conn. Aug. 19, 2014) ("[T]he statute of limitations for a federal claim is tolled upon the filing of a federal complaint, even if personal jurisdiction over the defendant is not established until service of process is later effected."). Accordingly, Mr. Williams may cure any deficiencies of personal service under Rule 4(m) without raising additional statute of limitations concerns.

Sept. 3, 2014). Accordingly, the Court will allow Mr. Williams an additional thirty (30) days from the date of this Order to serve the Defendants properly.[5]

---

[5] To the extent that the proper service allowed for by this ruling occurs, it is also apparent from Defendants' Motion to Dismiss and the applicable law that a number of Mr. Williams's legal claims are not viable. From the course of the proceedings and the Amended Complaint itself, the Court determines that Mr. Williams has only pled claims against the individually named Defendants in their official capacities. *See Rodriguez v. Phillips*, 66 F.3d 470, 482 (2d Cir. 1995) (in evaluating whether claims are brought against individuals in their official or personal capacities, courts look to the substance of the complaint and the course of the proceedings). As a result, the defamation claim and the 42 U.S.C. §§ 1981 and 1983 claims against the individually named Defendants for money damages are barred by sovereign immunity. *See Miller v. Egan*, 265 Conn. 301, 314 (2003) (holding that, to circumvent sovereign immunity on a claim for money damages, a plaintiff must show that the legislature waived the state's immunity); *see also e.g.*, *Heyward v. Connecticut*, No. UWYCV136019925, 2014 WL 929361, at *6 (Conn. Super. Ct. Feb. 4, 2014) (dismissing defamation claim against the state based on the doctrine of sovereign immunity, because state had not waived immunity for this type of claim); *Quern v. Jordan*, 440 U.S. 332, 345 (1979) (section 1983 did not abrogate sovereign immunity of the states); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 71 (1989) (state is not a person under section 1983 and claims against individuals in their official capacities are equivalent to claims against the state); *Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 735 (1989) (Section 1983 provides the "exclusive federal damages remedy for the violation of the rights guaranteed by § 1981" against a state actor). The claims under 42 U.S.C. §§ 1983 and 1981 against DOC are also barred by sovereign immunity. *See Quern*, 440 U.S. at 345; *Will*, 491 U.S. at 64, 71; *Jett*, 491 U.S. at 735. The CFEPA claim is also barred by sovereign immunity, as it was brought in federal court. Conn. Gen. Stat. § 46a-100 (waiving immunity for CFEPA claims in state court only); *see also Alungbe v. Bd. of Trustees of Conn. State Univ. (CSU) Sys.*, 283 F. Supp. 2d 674, 687 (D. Conn. 2003). The Amended Complaint also fails to plausibly allege the existence of a conspiracy, which is fatal to his claim under 42 U.S.C. § 1985. *See e.g.*, *Johnson v. City of New York*, 669 F. Supp. 2d 444, 451-52 (S.D.N.Y. 2009) (granting a motion to dismiss on a section 1985(3) claim where the complaint contained only a "bare assertion that a conspiracy existed" unsupported by specific facts "respecting a meeting of the minds, specific communications between the [ ] defendants, or even concerted activities or coordinated efforts between them"). Finally, the Title VII claim brought against the individually named Defendants in their official capacities is redundant, because DOC is also named. *See Emmons v. City Univ. of New York*, 715 F. Supp. 2d 394, 410-11 (E.D.N.Y. 2010) (even if Title VII claims against state employees in their official capacities are permissible, they are redundant if the employing state entity is named); *see also McBride v. Routh*, 51 F. Supp.2d 153, 156-57 (D. Conn. 1999) (reasoning that Title VII does not provide a cause of action against individual state employees named in their official capacities); *Gray v. Shearson Lehman Bros., Inc.*, 947 F. Supp. 132, 135-36 (S.D.N.Y. 1996) (same). And any aspect of Mr. Williams's Title VII claim based on conduct that occurred more than 300 days before the charge was filed with the Commission on Human Rights and Opportunities is time-barred. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996); *See Nat'l Passenger R.R. Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Accordingly, based on the Amended Complaint filed, the only claims capable of surviving a motion to dismiss are the following: the Title VII claim against DOC and the 42 U.S.C. §§ 1981 and 1983 claims against the individually named Defendants in their official capacities for injunctive and declaratory relief.

### III.     CONCLUSION

For all of the foregoing reasons, the Defendants' Motion to Dismiss, ECF No. 26, is **GRANTED** in its entirety, because the Court lacks personal jurisdiction over the Defendants.  Dismissal is without prejudice to Mr. Williams properly serving the Defendants with process within thirty (30) days of the date of this Order.  Failure to properly serve the Defendants by the deadline will result in dismissal.

**SO ORDERED** this 24th of August 2016 at Bridgeport, Connecticut.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE